IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DALE GALLAHER, ROBERT WILSON,
RUSSELL POWELL, ANDRU KELLER,
ERIC HEID, JOHN HEADLEY,
BRADLEY EBERT, DWAYNE MCELROY,
ROLAND MAYLE, BENJAMIN BECKETT,
ROGER GREATHOUSE, CHRISTOPHER COGAR,
and ANDREW TOSH,

      Plaintiffs,

v.                                    Civil Action No. 5:09CV69
                                            (STAMP)

KBR, INC.,
KELLOGG, BROWN & ROOT SERVICES, INC.,
KBR TECHNICAL SERVICES, INC.,
OVERSEAS ADMINISTRATION SERVICES, LTD. and
SERVICE EMPLOYEES INTERNATIONAL, INC.,

      Defendants.


### MEMORANDUM OPINION AND ORDER DENYING AS MOOT DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT, OR IN THE ALTERNATIVE GRANTING DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT; GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENT TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS; GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER SEAL; GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT; DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE; DENYING AS MOOT DEFENDANTS' MOTION TO TEMPORARILY STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR LIMITED JURISDICTIONAL DISCOVERY; DENYING AS MOOT DEFENDANTS' MOTION FOR ENTRY OF A "LONE PINE" ORDER PURSUANT TO RULE 16 AND 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND DENYING AS MOOT PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

## I.  Procedural History

The plaintiffs, thirteen current and former members of the West Virginia Army National Guard, filed this action in this Court, asserting claims of negligence, gross negligence, and tort of outrage against KBR, Inc., Kellogg, Brown & Root Services, Inc. ("Kellogg"), KBR Technical Services, Inc. ("KBR Technical"), Overseas Administration Services, Ltd. ("OAS"), and Service Employees International, Inc. ("SEI").  Thereafter, the defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule ("Rule") 12(b)(2) and 12(b)(3).  This Court then granted two separate motions by the plaintiffs for extension of time for the plaintiffs to file a response to the motion to dismiss.  This Court granted a second motion for extension of time to respond to the defendants' motion to dismiss filed by the plaintiffs.  On February 8, 2010, this Court granted the plaintiffs' unopposed motion for leave to file an amended complaint.  That same day, the plaintiffs filed an amended complaint in order to add additional plaintiffs to their cause of action.  This Court then denied the defendants' motion to dismiss the original complaint as moot.  On March 4, 2010, the plaintiffs filed a motion for entry of default against the defendants for failure to plead or otherwise defend within the time provided by the Federal Rules of Civil Procedure.  The Clerk of Court then entered default pursuant to Rule 55(a) as to all defendants.  Also

on March 4, 2010, the defendants filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(2) and 12(b)(3). Additionally, Mark Lowes, Vice-President, Litigation for KBR, Inc., KBR Technical, and Kellogg, attached a declaration in support of dismissal.[1]  The plaintiffs responded to this motion to which the defendants replied.  On April 20, 2010, the plaintiffs filed a motion for leave to file a supplemental response to the defendants' motion to dismiss.  The defendants did not file a response to that motion.  On March 12, 2010, the defendants filed a motion to vacate the entry of default.  For the reasons set forth below, the defendants' motion to vacate the entry of default is granted.  The plaintiffs' motion for leave to file a supplemental response to the defendants' motion to dismiss is granted.  Finally, the defendants' motion to dismiss the amended complaint is granted.[2]

---

[1]In evaluating whether it has personal jurisdiction to hear a case, a district court may consider affidavits.  In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).

[2]As a result of this memorandum opinion and order, this Court DENIES AS MOOT the defendants' motion to dismiss the first amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendants' motion to temporarily stay discovery pending resolution of motion to dismiss, or, in the alternative, for limited jurisdictional discovery, the defendants' motion for entry of a Lone Pine order, and the plaintiffs' motion for a protective order.

## II.  <u>Facts</u>[3]

Kellogg and KBR Technical, American contracting firms working in Iraq, worked on completing a project involving the restoration of the Qarmat Ali water plant in southern Iraq.  The United States military deployed and assigned the plaintiffs to the Qarmat Ali water plant to provide security for the civilian employees and others performing repairs and restoration of the water plant.  While providing security to the water plant, the plaintiffs allege that they were exposed to sodium dichromate, a toxic chemical used as an anti-corrosive, which contained nearly pure hexavalent chromium, a carcinogen.

The plaintiffs believe that the defendants knew or should have known about the site contamination and the extreme danger of exposure to the plaintiffs.  They allege that the defendants failed to disclose the nature and extent of the contamination and exposure risks and failed to warn the plaintiffs of the dangers of such exposure.  They further allege that the defendants failed to protect the health and safety of the plaintiffs and concealed the facts of contamination and the danger of working at Qarmat Ali, even after blood tests confirmed elevated chromium levels.  As a result of the defendants' conduct, the plaintiffs allege that they

---

[3]For purposes of deciding this motion, the facts are based upon the allegations contained in the complaint.

have manifested significant adverse health conditions and experience chemical sensitivities.

### III. Applicable Law

#### A. Default

Rule 55(c) states that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." In the present case, a default judgment has not yet been entered, and this Court must evaluate the defendants' motion under the "good cause" standard of Rule 55(c), rather than the more rigorous standard of Rule 60(b). In deciding the motion to set aside the entry of default, this Court considers "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204 (4th Cir. 2006).

#### B. Personal Jurisdiction

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving the existence of the grounds for jurisdiction by a preponderance of the evidence. Owens-Illinois, Inc. v. Rapid Am. Corp., (In re The Celotex Corp.), 124 F.3d 619,

628 (4th Cir. 1997) (citing <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989)).

Under a "long-arm" statute, such as West Virginia Code § 56-3-33,[4] a state may enable its courts to exercise personal

---

[4]Section 56-3-33 states, in pertinent part:

(a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
. . .
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, <u>only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her</u>.

W. Va. Code § 56-3-33 (emphasis added).

6

jurisdiction over non-residents that commit certain acts within the state, or certain acts outside of the state, that have caused injury within the state. See Lozinski v. Lozinski, 408 S.E.2d 310, 315 (W. Va. 1991) ("The intent and benefit of any long-arm statute is to permit the secretary of state to accept process on behalf of a nonresident and to view such substituted acceptance as conferring personal jurisdiction over the nonresident."). Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997). Instead, the "statutory inquiry merges with the Constitutional injury," and this Court must determine whether exercising personal jurisdiction is consistent with the due process clause. Id. at 628; see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

Due process requires that a defendant receive adequate notice of the suit and be subject to the personal jurisdiction of the court. Id. (citations omitted). The exercise of personal jurisdiction over a non-resident defendant is proper only so long as "minimum contacts" exist between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l

Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

If the defendant's contacts with the forum state provide the basis for the suit, those conducts may establish "specific jurisdiction." Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003). To determine whether specific jurisdiction exists, this Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Id. (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002)).

If the defendant's contacts with the state are not the basis for the suit, however, then jurisdiction "must arise from the defendant's general, more persistent, but unrelated contacts with the state." Id. A plaintiff establishes general jurisdiction by showing that the defendant's activities in the state have been "continuous and systematic." Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 & n.9 (1984)).

## IV.  Discussion

### A.  Default

The defendants argue that this Court should set aside the default entered by the Clerk pursuant to Rule 55(a).  In a case such as this, "an action will be dismissed despite the entry of a default when it appears that the court lacks . . . personal jurisdiction over defendant.  10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2696 (3d ed. 1998). Accordingly, this Court finds that the default was improvidently granted and that the defendants' motion to vacate the entry of default must be denied as moot.

Alternatively, this Court grants the defendants' motion to vacate the entry of default as the Fourth Circuit law is not clear on whether this Court must set aside the default in order to rule upon the jurisdictional motion.[5]  The plaintiffs first argue that they had agreed to an extension of time to respond to the complaint.  On the same day the plaintiffs filed the motion for entry of default, the defendants filed their motion to dismiss.  In addition, defendants' counsel states that he telephoned the

---

[5]There is a split of authority on whether a court must set aside a default to entertain a motion to dismiss based on lack of personal jurisdiction.  Compare Kadet-Kruger & Co. v. Celanese Corp. of Am., 216 F. Supp. 249, 250 (N.D. Ill. 1963) (vacating default order where the court lacked personal jurisdiction), with Bavouset v. Shaw's of San Francisco, 43 F.R.D. 296, 299 (S.D. Tex. 1967) (finding that defendant waived the right to object to personal jurisdiction under Rule 12(h) by falling into default).

plaintiffs' local counsel to inquire why the plaintiffs filed the motion for entry of default. Defendants state that the plaintiffs' local counsel stated in that telephone conversation that he was directed to do so by the plaintiffs' other counsel. The defendants next argue that the failure to answer was because of excusable neglect. As mentioned above, because default was entered, this Court need only review the defendants' motion under the good cause standard of Rule 55(c), not under the stricter Rule 60(b) standard of excusable neglect.

This Court finds that the defendants have shown good cause to set aside the entry of default. In this case, the defendants had responded to the original complaint. The defendants believed they had an agreement with the plaintiffs for an extension of time to respond to the amended complaint. After the plaintiffs filed the motion for default, the defendants promptly responded to the amended complaint on that same day and then later moved to set aside the default. The plaintiffs did not respond to the motion to set aside default, but this Court can find no prejudice to the plaintiffs as the defendants had previously filed a very similar response to the original complaint. Finally, this Court has reviewed the record and notes that the defendants' conduct throughout the course of this litigation has not been dilatory.

Accordingly, this Court finds that the defendants' motion to vacate the entry of default must be granted.[6]

B.   Contacts with West Virginia

1.   KBR, Inc.

KBR, Inc. is a Delaware corporation with its principal place of business in Texas.  Mark Lowes Decl. ¶ 4.  It is not registered to do business in West Virginia, but it does have an agent for service of process in West Virginia.  Id. ¶ 4-5.  It owns no property in West Virginia, pays no West Virginia taxes, and maintains no West Virginia bank accounts.  Id. ¶ 4.  It has no offices or other facilities in West Virginia.  Id.  It does not solicit business in West Virginia, direct business activities toward West Virginians, or advertise in West Virginia.  Id.  It has no West Virginia mailing address and no employees working in West Virginia.  Id.  KBR, Inc. has no direct employees in West Virginia. Id.

The plaintiffs show that KBR, Inc. has registered 118 vehicles in West Virginia.  The defendants do not refute this in their reply brief, but stated in the answers to requests for production that their internal investigation did not reveal any documents pertaining to personal property owned in West Virginia.   For

_____

[6]The defendants further ask that this Court deny the plaintiffs' motion for default judgment.  This Court notes that the plaintiffs filed a motion for entry of default pursuant to Rule 55(a), but never filed a motion for default judgment pursuant to Rule 55(b).

11

purposes of this motion to dismiss, this Court views the facts in the light most favorable to the plaintiffs, therefore, assuming that KBR, Inc. has registered 118 vehicles in West Virginia and must pay personal property taxes on those vehicles.

    2.    Kellogg

Defendant Kellogg is a Delaware corporation with its principal place of business in Texas.  Id. ¶ 6.  KBR, Inc.'s government and infrastructure business unit is an engineering, construction, and services contractor.  Id.  Kellogg is the operating company and contracting entity for that unit.  Id.  Kellogg contracted with the United States Government to provide logistical support to the military in the Middle East.  Id.  Kellogg is registered to do business in West Virginia and Kellogg has an agent for service of process in West Virginia.  Id. ¶ 7.  Kellogg, however, does not currently perform work in West Virginia, nor does it have contracts to perform work in West Virginia.  Id. ¶ 6.  Kellogg does not solicit business in West Virginia, nor does it direct business activities toward West Virginia residents.  Id.  It does not advertise in West Virginia.  Further, Kellogg has no offices or other facilities in West Virginia and has no mailing address in West Virginia.  Id.  It has no employees working in West Virginia.  Id.  Finally, Kellogg owns no West Virginia property, pays no West Virginia taxes, and maintains no West Virginia bank accounts.  Id.

3. <u>KBR Technical</u>

KBR Technical is a Delaware corporation with its principal place of business in Texas. <u>Id.</u> ¶ 8. KBR Technical employs individuals who perform work for KBR related companies. <u>Id.</u> Unlike Kellogg, KBR Technical is not registered to do business in West Virginia. <u>Id.</u> It does have an agent for service in West Virginia. <u>Id.</u> ¶ 11. KBR Technical maintains no offices or other facilities in West Virginia, has no West Virginia mailing address, and has no employees working in West Virginia. <u>Id.</u> ¶ 8. Further, KBR Technical does not solicit business in West Virginia, direct business activities toward West Virginia residents, or advertise in West Virginia. <u>Id.</u> It does not own West Virginia property and maintains no West Virginia bank accounts. <u>Id.</u> KBR Technical employs 5,800 individuals. <u>Id.</u> ¶ 9. Since its start in 1989, KBR Technical has employed approximately 27 people who provided residential addresses in West Virginia. <u>Id.</u> These individuals, however, did not work in West Virginia. <u>Id.</u> KBR Technical does not incur tax liability or pay taxes in West Virginia other than submitting income tax withholdings on behalf of current employees who list permanent West Virginia residential addresses. <u>Id.</u> ¶ 10.

4. <u>OAS and SEI</u>

OAS and SEI are Cayman Islands corporations with their principal place of business in Dubai, United Arab Emirates. <u>Id.</u> ¶ 12. Neither corporation is registered to do business in West

Virginia, nor do they have an agent for service of process in West Virginia. Id. They own no property in West Virginia, pay no West Virginia taxes, and maintain no West Virginia bank accounts. Id. They have no offices or other facilities in West Virginia. Id. They do not solicit business in West Virginia, direct business activities toward West Virginians, or advertise in West Virginia. Id. They have no West Virginia mailing address and no employees working in West Virginia. Id. OAS employs approximately 1,000 people and SEI employs approximately 25,000 people. Id. ¶ 13. OAS has employed 12 people who have listed West Virginia addresses and SEI has employed around 165 people who have listed West Virginia addresses. Id. None of these employees worked in West Virginia. Id. All employees for these companies worked outside of the United States. Id.

The plaintiffs state that OAS and SEI recruited West Virginians on the website www.kbrjobs.com.

C.  Specific Jurisdiction

The plaintiffs contend that specific jurisdiction exists pursuant to the "effects test" developed by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984). The effects test requires that the plaintiffs establish that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

Carefirst, 334 F.3d at 398 n.7.  The plaintiffs allege in their complaint that the defendants intentionally directed their negligent conduct at the plaintiffs.  The defendants challenge the validity of this tort.  At this stage in the litigation, this Court will accept the allegations in the plaintiffs' complaint as true and will assume, without deciding, that the plaintiffs have met the first prong of the effects test.

As to the second and third prongs, the United States Court of Appeals for the Fourth Circuit has taken a "restrictive" interpretation of Calder and the effects test.  JTH Tax, Inc. v. Liberty Servs. Title, Inc., 543 F. Supp. 2d 504, 508 (E.D. Va. 2008) (citing ESAB Group, Inc. v. Centricut, 126 F.3d 617, 625-26 (4th Cir. 1997)).  The plaintiffs acknowledge this in their response, but assert that there "is no true difference between the Fourth Circuit's interpretation of Calder and the interpretation applied by a majority of other courts."  This Court does not agree.  First, the Fourth Circuit is not in a minority of courts in taking a restrictive view of Calder and the effects test.  See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 634 (1st Cir. 2001) ("[I]t cannot be enough that the defendant knew when it acted that its victim lived in the forum state."); IMO Indus., Inc. v. Kiekert, AG, 155 F.3d 254, 262-63 (3d Cir. 1988) ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located

15

there is insufficient to satisfy <u>Calder</u>."); <u>Southmark Corp. v. Life</u>
<u>Investors, Inc.</u>, 851 F.2d 763, 773 (5th Cir. 1988) (concluding that
where the location of the plaintiff's business in the forum was a
"mere fortuity," that was insufficient to show that the defendant
expressly aimed its actions at the forum); <u>Air Products and</u>
<u>Controls, Inc. v. Safetech Int'l., Inc.</u>, 503 F.3d 544 (6th Cir.
2007) ("[T]he mere allegation of intentional tortious conduct which
has injured a forum resident does not, by itself, always satisfy
the purposeful availment prong."); <u>General Electric Capital Corp.</u>
<u>v. Grossman</u>, 991 F.2d 1376, 1387-88 (8th Cir. 1993) (taking a
restrictive view of <u>Calder</u>); <u>Far West Capital, Inc. v. Towne</u>, 46
F.3d 1071 (10th Cir. 1995) (same); <u>Price v. Socialist People's</u>
<u>Libyan Arab Jamahiriya</u>, 294 F.3d 82, 95 (D.C. Cir. 2002) (finding
that the torturing of two American citizens in Libya did not
satisfy the minimum contacts requirement). Secondly, there is a
difference of interpretation between the Fourth Circuit's and the
Ninth Circuit's interpretation of <u>Calder</u>. <u>See</u> <u>JTH Tax</u>, 543 F.
Supp. 2d at 508 (contrasting the Fourth Circuit's restrictive
reading of <u>Calder</u> to the Ninth Circuit's broad reading of <u>Calder</u>).

The plaintiffs argue that the defendants knew that the
plaintiffs were from West Virginia and would presumably return to
West Virginia. The plaintiffs believe that because their alleged
diseases manifested in West Virginia, that defendants directed
their conduct into West Virginia and West Virginia is the focal

point of the harm.  The plaintiffs cite to <u>Janmark, Inc. v. Reidy</u>, 132 F.3d, 1200 (7th Cir. 1997).  This Court first notes that the Seventh Circuit interprets the effects test broadly.  <u>Id.</u>  Despite the Seventh Circuit's differing interpretation, <u>Janmark</u> still supports this Court's decision.  The plaintiffs discuss the "ticking time bomb" hypothetical in which a tortfeasor places a bomb in a shipment of shopping carts in New Jersey and sends the shipment to Illinois.  <u>Id.</u> at 1202.  The bomb explodes in Illinois.  <u>Id.</u>  Therefore, the tort occurs in Illinois.  <u>Id.</u>  This Court agrees with the Southern District of Illinois that the scenario in this case more closely resembles a different hypothetical from <u>Janmark</u> in which a person sends a shipment of shopping carts to New Jersey where a tortfeasor then pushes the carts into the ocean.  <u>Id.</u>; <u>McManaway v. KBR, Inc.</u>, --- F. Supp. 2d ----, 2010 WL 724599 (S.D. Ind. Feb. 25, 2010).  While the injury is felt in Illinois, the tort occurred in New Jersey.  <u>Id.</u>  In this case, the alleged tort occurred in Iraq.  The tort does not relocate to wherever any of these plaintiffs chooses to reside, even though the effects of the alleged injury may be felt there.  <u>See</u> <u>ESAB Group</u>, 126 F.3d at 626 (stating that jurisdiction does not depend on a plaintiff's decision about where to establish residence as the plaintiff always feels the impact of the harm where he resides).

As to the last prong of the test, this Court concludes that West Virginia is not the focal point of the tortious activity.  The

plaintiffs argue that the defendants expressly aimed their alleged tortious actions at West Virginia because the defendants knew that the plaintiffs were from West Virginia and were likely to return to West Virginia.

This Court finds that the plaintiffs cannot show that the defendants expressly targeted West Virginia. The plaintiffs want this Court to follow the court in Bixby v. KBR, Inc., 2010 WL 1499455 (D. Or. April 12, 2010), in holding that this Court has jurisdiction pursuant to Calder. The magistrate judge in Bixby stated that because the KBR defendants knew that the plaintiffs were soldiers from Oregon, they expressly aimed their misrepresentation at Oregon. This Court, however, is bound by Fourth Circuit precedent. The plaintiffs have failed to show that the defendants expressly aimed their alleged tortious conduct at West Virginia. National Guard soldiers from other states were affected by the defendants' alleged actions. Id.; McManaway v. KBR, Inc., --- F. Supp. 2d ----, 2010 WL 724599; Bootay v. KBR, Inc., 2010 WL 1257716 (W.D. Pa. March 26, 2010). This Court agrees with the Southern District of Indiana, which found that the "Defendants 'targeted' any and all individuals passing through Qarmat Ali -- that some of those individuals happened to be residents of [this state] was merely fortuitous." McManaway, 2010 WL 724599 at *7. Despite the Seventh Circuit's broad interpretation of Calder, the Southern District of Indiana

concluded that the plaintiff's argument was "simply too tenuous" to conclude that the defendant expressly targeted the state.

This Court concludes that the defendants did not act with the "manifest intent" of targeting West Virginians. Carefirst, 344 F.3d at 400. The fact that the defendants allegedly injured National Guardsmen from West Virginia was "merely fortuitous." While the place that the plaintiffs feel an alleged injury is relevant to the jurisdictional inquiry, "it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." ESAB Group, 126 F.3d at 626. The plaintiffs completely rely on the effects test and have not shown that the exercise of jurisdiction comports with the requirements of due process.

D. General Jurisdiction

In order for this Court to have general jurisdiction over the defendants, the plaintiffs must show that the defendants' contacts with West Virginia are "continuous and systematic." Helicopteros, 466 U.S. at 416. The "threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." ESAB Group, 126 F.3d at 623. This Court assesses jurisdiction as to each defendant separately. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

Before this Court considers whether general personal jurisdiction exists for each defendant, it must address the

plaintiffs' contention that general personal jurisdiction should be assessed by looking to KBR, Inc. and all of its subsidiaries as one company. Kellogg, Brown & Root, LLC ("KBR LLC"), a subsidiary of KBR, Inc., entered into a contract in November 2009 to provide construction maintenance, construction management, and other plant services to E.I. duPont Nemours and Company in West Virginia. The plaintiffs assert that this Court should perform an elaborate piercing of the corporate veil in order to attain general jurisdiction over the defendants. The plaintiffs contend that all KBR related entities are essentially one company. The plaintiffs, therefore, want this Court to pierce the corporate veil between defendant KBR, Inc. and non-party KBR LLC and again between KBR, Inc. and each of the defendants. At that point, the plaintiffs claim that there is no distinction between the parent and any subsidiary and that any subsidiary's contacts with West Virginia can be imputed to any other subsidiary of KBR, Inc.

West Virginia "law presumes that two separately incorporated businesses are separate entities." S. Elec. Supply Co. v. Raleigh County Nat'l Bank, 320 S.E.2d 515, 523 (W. Va. 1984). To overcome the presumption in this case, the plaintiffs argue that all of the stock of all the defendants except KBR, Inc.[7] is held by KBR Holdings, LLC or KBR Group Holdings, LLC; the defendants share officers and directors; the finances of the defendants, as well as

_____

[7]KBR, Inc. is a publicly owned company.

those of other KBR, Inc. subsidiaries, flow upward; profits and losses are joined in a consolidated filing for KBR, Inc.; the defendants' only customer is other KBR related entities; and the actions and conduct of each of the defendants, as well as all KBR related entities, is directed from the top down, and all employees of all KBR related entities perform work on behalf of KBR as a whole.

The plaintiffs cite <u>Toney v. Family Dollar Stores, Inc.</u>, 273 F. Supp. 2d 757, 761 (S.D. W. Va. 2003), which in turn cites <u>Bowers v. Wurzburg</u>, 501 S.E.2d 479, 490 (W. Va. 1998). <u>Bowers</u> is not controlling in federal district court as it lays out eleven factors for West Virginia courts to consider when determining whether a parent company is subject to jurisdiction, a procedural issue. Instead, this Court looks to the substantive law of West Virginia. Piercing the corporate veil through the alter ego doctrine was created "to prevent injustice when the corporate form is interposed to perpetrate an intentional wrong, fraud or illegality." <u>S. Elec. Supply Co.</u>, 320 S.E.2d 515, 521-22 (W. Va. 1984). West Virginia courts apply this "complicated" doctrine "gingerly." <u>Id.</u> The burden of proof is on the party soliciting the court to disregard the corporate structure -- "[i]t is not easily proved." <u>Id.</u> at 522.

This Court may pierce the corporate shield "to make a corporation liable for behavior of another corporation within its

total control." Id.  This examination must be made on a case-by-case basis with particular attention to factual details.  Id. at 523.  West Virginia courts have identified several factual details to look to in making this determination:

> total control and dominance of one corporation by another or a shareholder; existence of a dummy corporation with no business activity or purpose; violation of law or public policy; a unity of interest and ownership that causes one party or entity to be indistinguishable from another; common shareholders, common officers and employees and common facilities.

Id.  This Court must analyze this evidence "in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to 'pierce the veil.'"  Id.

Despite viewing the facts alleged in the complaint as true and resolving all factual disputes in favor of the plaintiffs, the plaintiffs do not submit sufficient evidence to overcome the presumption in this case as to defendants Kellogg, KBR Technical, OAS, and SEI.  The plaintiffs first point to the fact that the stock of KBR, Inc.'s subsidiaries is held by two holding companies. "Nothing in [West Virginia's] law prohibits one man or group from . . . owning two separate corporations with common purposes."  Id. at 524.  The plaintiffs also argue that the shared officers and directors, the "upward flow" of finances, the consolidated filings of losses and profits, the "one customer," and work being directed from the top down should cause this Court to pierce the corporate

veil. Common ownership and common management, without evidence of fraudulent conduct, _total_ control, or a "dummy" corporation, does not justify piercing the corporate veil. _Id._ While the plaintiffs may have shown that the KBR, Inc. subsidiaries are related, they have not shown that the corporations share the same purpose. Even if this Court pierced the corporate veil between KBR, Inc. and KBR LLC and then pierced the corporate veil between KBR, Inc. and each of the defendants, the plaintiffs have given this Court no reason to then impute KBR LLC's conduct to the defendants. The plaintiffs have provided this Court with no information that KBR LLC has _total_ control over either of the defendants or that either of the defendants has _total_ control over KBR LLC that would allow this Court to find that KBR LLC is the alter ego of Kellogg or KBR Technical. _Id._ This Court has seen no evidence that any subsidiary company is undercapitalized. _Id._ There is also no proof that funds are commingled. _Id._ The plaintiffs state that each of the subsidiaries report their profits and losses in a consolidated report. This does not show commingling of funds.[8] Accordingly, this Court finds that the plaintiffs have not shown that KBR LLC is so organized and controlled as to be a mere adjunct or instrumentality of Kellogg, KBR Technical. OAS, or SEI. _Id._

---

[8]_E.g._, Consolidated Financial Statements, Accounting Review Bulletin No. 51, ¶ 3 (1959) ("All majority-owned subsidiaries . . . shall be consolidated except [for subsidiaries that the majority-owner does not control].")

Thus, this Court will not pierce the corporate veil as to defendants Kellogg, KBR Technical, OAS, and SEI. <u>Id.</u> Further, this Court will not pierce the corporate veil as to those defendants and will analyze whether general jurisdiction may be exercised over each defendant in this case.

As to KBR, Inc., the parent company of KBR LLC, this Court must engage in a slightly different analysis. A party attempting to pierce the corporate veil between a holding company and a subsidiary must show that the subsidiary "has no separate dignity from its parent." <u>BASF Corp. v. POSM II Properties Partnership, L.P.</u>, 2009 WL 52272, *7 (Del. Ch. March 3, 2009). As the Delaware Court of Chancery has explained,

> [a] holding corporation . . . must present reports of their affairs on a consolidated basis. The fact that holdings corporations do so does not render all their subsidiaries inutile, deprived of all their separate legal dignity. If that were the case, one wonders why large public holding corporations would continue their common practice of running business lines and holding assets through multiple subsidiaries. After all, simply by making SEC filings, the holding corporation would eliminate its subsidiaries' separate legal existences!

<u>Id.</u> at *8. The plaintiffs provide this Court with nothing to support their allegation that KBR, Inc. actually operates the KBR LLC operation in Belle, West Virginia in place of its operating subsidiary. The fact that KBR Inc. does not have any employees or business operations and operates exclusively through its subsidiary companies does not mean that this Court will pierce the corporate veil. <u>Id.</u> As West Virginia courts have stated, the evidence to

24

pierce "must be analyzed in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party seeking to 'pierce the veil.'" S. Elec. Supply Co., 320 S.E.2d at 523. Taking all facts in the most favorable light to the plaintiffs, they have done nothing more than to show that KBR, Inc. is a holding company of KBR LLC. This Court has seen no evidence that KBR LLC is undercapitalized. Id. There is also no proof that funds are commingled. Id. The plaintiffs state that each of the subsidiaries report their profits and losses in a consolidated report, but as stated above, that is consistent with Generally Accepted Accounting Principals. Consolidated Financial Statements, Accounting Review Bulletin No. 51, ¶ 3 (1959). No information provided to this Court in the plaintiffs' response to the motion to dismiss leads this Court to the conclusion that KBR LLC and KBR, Inc. have an abnormal subsidiary -- holding company parent relationship. Accordingly, because the plaintiffs have failed to establish that KBR LLC and KBR, Inc. function outside the bounds of a normal parent holding company -- subsidiary relationship, this Court will not pierce the corporate veil between these two companies. Thus, this Court will not pierce the corporate veil and will analyze whether general jurisdiction may be exercised over each defendant in this case.

1. __KBR, Inc.__

KBR, Inc., while not registered to do business in West Virginia, has an agent for service of process. This contact is not sufficient to establish general personal jurisdiction. __Ratliff v. Cooper Labs., Inc.__, 444 F.2d 745, 748 (4th Cir. 1971). The larger contact with West Virginia is the 118 cars registered to KBR, Inc. in the state. The Fourth Circuit has held that a company that keeps automobiles, samples, and promotional materials in a state is not sufficient for exercising general jurisdiction. __Nichols v. G.D. Searle & Co.__, 991 F.2d 1195, 1200 (4th Cir. 1993). The Court found that keeping automobiles in the state is "naturally derivative" of the companies solicitation activity in employing its representatives there. __Id.__ These contacts are too insubstantial to support a finding of general jurisdiction. __Id.__; __Ratliff__, 444 F.2d at 748; __ESAB Group__, 126 F.3d at 624.

2. __Kellogg__

Kellogg is registered to do business in West Virginia and Kellogg has an agent for service of process in West Virginia. These contacts with West Virginia are not sufficient to establish general personal jurisdiction. __Ratliff__, 444 F.2d at 748.

3. __KBR Technical__

Since its creation in 1989, KBR Technical has employed approximately 27 people who provided residential addresses in West Virginia. These individuals, however, did not work in West

Virginia. The plaintiffs also identify 500 flights into and out of West Virginia airports paid for by defendant KBR Technical. These contacts with West Virginia are not sufficient to establish general personal jurisdiction. See id. at 746, 748 (finding that a company that maintained five "detail men" who lived in the state and promoted the company's products through personal contacts with professionals and stores throughout the forum state did not have sufficient minimum contacts to have general personal jurisdiction). This Court also finds unpersuasive the plaintiffs' arguments that because an employee of KBR Technical took a master electrical exam in West Virginia, KBR Technical can be said to have continuous and systematic contacts with the forum. Finally, this Court finds the plaintiffs' contention that there is general jurisdiction over the defendants because of the mere fact that KBR entities have been sued in West Virginia courts approximately on 25 occasions unpersuasive to exercise personal jurisdiction over the defendants. This Court agrees with the defendants that just because a party is sued on multiple occasions in a state does not establish personal jurisdiction in that state.

Because this Court finds that it lacks personal jurisdiction over the defendants, it does not need to address the defendants' argument that there is a more appropriate venue for this civil action.

4.  <u>OAS and SEI</u>

OAS and SEI have employed West Virginians in the past.  These employees, however, conducted no business for these companies in West Virginia.  Instead, they completed projects overseas.  This Court agrees with the Southern District of Indiana that the fact that some of these companies' employees choose to live in West Virginia is "merely fortuitous."  <u>McManaway v. KBR, Inc.</u>, --- F. Supp. 2d ----, 2010 WL 724599.  Additionally, the plaintiffs assert that West Virginians were recruited to work for OAS and SEI through the website www.kbrjobs.com.  The Fourth Circuit adopted a sliding scale approach to whether a defendant's electronic contacts with a forum state allow for the exercise of personal jurisdiction.  <u>ALS Scan</u>, 293 F.3d at 713-14.  At one end of the spectrum are passive web sites that just provide people with information.  <u>Id.</u>  At the other end of the spectrum are web sites where defendants conduct business over their web sites and engage in repeated contacts with a particular state.  <u>Id.</u>  In the middle are interactive web sites where a person may exchange information with the host computer.  <u>Id.</u>  In a middle ground situation, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  <u>Id.</u>  The Fourth Circuit has emphasized that the evidence must show that the defendants directed electronic activity into West Virginia with the "manifest intent of engaging in business or other

interactions with that state in particular." <u>Carefirst</u>, 334 F.3d at 401. This Court is confronted with a middle ground situation. The kbrjobs web site contains more than just passive information. However, the web site is not soliciting continuous business with residents of the state. Here, the web site does not recruit West Virginians for jobs with OAS and SEI in West Virginia. It recruits anyone in the world for OAS and SEI jobs <u>outside</u> of the United States. There is no manifest intent to target residents of West Virginia, but instead a general intent to target all people in the United States.

Because this Court finds that it lacks personal jurisdiction over the defendants, it does not need to address the defendants' argument that there is a more appropriate venue for this civil action.

### IV. Conclusion

For the reasons stated above, the defendants' motion to vacate entry of default (Docket No. 49) is DENIED AS MOOT, or in the alternative, is GRANTED. The plaintiffs' motion for leave to file supplement to plaintiffs' response to defendants' motion to dismiss (Docket No. 70) is GRANTED. The plaintiffs' motion for leave to file under seal (Docket No. 87) is GRANTED. The defendants' motion to dismiss amended complaint (Docket No. 46) is GRANTED. The defendants' motion to dismiss first amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Docket No.

74) is DENIED AS MOOT.  The defendants' motion to temporarily stay discovery pending resolution of motion to dismiss, or in the alternative, for limited jurisdictional discovery (Docket No. 75) is DENIED AS MOOT.  The defendants' motion for entry of a <u>Lone Pine</u> order pursuant to Rule 16 and 26 of the Federal Rules of Civil Procedure (Docket No. 76) is DENIED AS MOOT.  Finally, the plaintiffs' motion to compel (Docket No. 82) is DENIED AS MOOT. Accordingly, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    July 21, 2010


                              <u>/s/ Frederick P. Stamp, Jr.   </u>
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE